WORK v. BAILEY.　See Case No. 2,814.

## Case No. 18,045.

### The WORKMAN.

[1 Low. 504.] [1]

District Court, D. Massachusetts. 1870.

DAMAGE TO TOW—LIABILITY OF TUG.

1. A tug, in towing a ship, brought her against a wharf. *Held*, that the tug was liable in damages, although the ship was rotten and unseaworthy, unless the condition of the vessel was the sole cause of the injury.

[Cited in The M. J. Cummings, 18 Fed. 183.]

2. The damages in such a case are the natural and necessary consequences of the collision to the vessel in her actual state of repair.

The steam tug Workman was hired to tow the bark White Wing from Fiske's wharf in Boston into the stream, and farther if required. The master of the tug made his boat fast to the port side of the ship, ordered the lines of the latter to be cast off, and steamed ahead. Presently the starboard side of the bark's stern came in contact with the wharf, but was soon cleared, and after they had proceeded a short distance it was found that the stern of the vessel had come off. The master of the tug had the control and charge of the navigation of both vessels. Several of the timbers of the stern were rotten, and a very considerable proportion of the repairs put on the vessel would not have been necessary but for this state of her works.

T. H. Russell, for libellant.
J. C. Dodge, for respondent.

LOWELL, District Judge. The libellant contends that, however rotten his ship may have been, the tug had no right to hit her against the wharf, and is justly responsible for the natural consequences of the act. On the other part, this general proposition is not denied; but it is maintained that the state of the timbers was the sole cause of the damage, and the blow only such a slight touch as every vessel is liable to receive in coming to or going from her wharf, and that no negligence, therefore, can be argued from the result, and that none has been proved. That the mere act itself had no naturally injurious consequences. The vessel was not old, and had been taken good care of, but dry rot had attacked her stern, without the knowledge of the owner. The unexpected

discovery of her actual state was said by one of the witnesses to be a very fortunate circumstance for her owner, because it may probably have saved her from a worse disaster. It seems clear that the bark was not sound, staunch, and seaworthy, as alleged by the libellant; and if this is a material and traversable averment it must be found against him. But there is no warranty of seaworthiness in a contract of towage, and the claimants cannot prevail upon this point, taken by itself, unless the evidence shall go the full length of showing that the whole damage was due to the state of the vessel. As, for instance, in any ordinary cause of collision, it would be immaterial that the injured vessel was insufficiently manned, or in any other respect unseaworthy, or even badly navigated, unless the defect caused or contributed to the disaster. Still less if a vessel were run into, would it be a defence that a stronger vessel would not have been injured. The undisputed fact that the tow was brought against the wharf with greater or less violence calls upon the tug for an explanation. The explanation given is that the motion of the vessels was very slow, and the blow very slight, such as ought not to injure a seaworthy vessel. The difficulty I have found with this defence is that it does not account for the blow itself. If it were shown that, by the usual and necessary course of navigation, a vessel must be expected to touch the ground or any other object at a certain point, a tugboat could not be held to guarantee her against touching there. And, of course, any sudden squall or other accident may be shown. But there is nothing of the sort shown here under either alternative. It is said that vessels often touch the wharf, but not that they usually strike it as this vessel did. She was swung round in such a way as to bring her stern against some part of the wharf, and, although the evidence is conflicting concerning the respective parts of vessel and wharf that were struck, and the force of the blow, I am not satisfied that it was a mere touch, to be overlooked as being one of the ordinary and necessary incidents of towage, like wear and tear. It is a hard case, undoubtedly, because it will be very difficult to draw a perfectly just and equitable line in the award of damages. I shall endeavor to do this as far as possible. My decision at present merely is that I cannot deprive the libellant entirely of damages, because I cannot be assured that the fault is wholly to be found in the defective character of his vessel.

Interlocutory decree for libellant. Damages to be assessed.

WORKMAN (DURKEE v.).　See Case No. 4,195.

WORKMAN (UNITED STATES v.).　See Case No. 16,764.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]